IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

HI-TECH ROCKFALL                )          CV. NO. 08-00081 DAE-LEK
CONSTRUCTION, INC., an Oregon )
corporation                     )
                                )
            Plaintiff,          )
                                )
     vs.                        )
                                )
COUNTY OF MAUI, a Hawaii        )
Municipal Corporation and JANOD, )
INC., a Foreign Profit Corporation, )
                                )
            Defendants.         )
_____  )


ORDER DENYING PLAINTIFF'S
MOTION FOR PRELIMINARY INJUNCTION
AND DISSOLVING THE TEMPORARY RESTRAINING ORDER

          On March 6, 2008, the Court heard Plaintiff's Motion.  John F.

Bradach, Sr., Esq., and Lyle M. Ishida, Esq., appeared at the hearing on behalf of

Plaintiff; Madelyn S. D'Enbeau, Jane E. Lovell, and Cheryl A. Tipton, Deputies

Corporation Counsel, appeared at the hearing on behalf of Defendant County of

Maui; Edquon Lee, Esq., and Paul R. Grable, Esq., appeared at the hearing on

behalf of Janod, Inc.  After reviewing the motion, the supporting and opposing

memoranda, and the supplemental declarations, Court DENIES Plaintiff's Motion

and dissolves the temporary restraining order.

BACKGROUND

On October 15, 2006, there was an earthquake which measured 6.7 on the Richter scale and caused extensive damage in the State of Hawaii, including the closure of a portion of the Hana Highway on the island of Maui due to falling rocks.  That same day Governor Linda Lingle issued a proclamation declaring a major disaster for the State of Hawaii, and authorized an emergency disaster fund and suspended the application of several State statutes, including Hawaii's procurement code, Hawaii Revised Statute Chapter 103D.  President Bush declared a major disaster under the Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5206 (the "Stafford Act").  President Bush authorized federal relief and recovery assistance and stated that the Federal Emergency Management Agency ("FEMA") would coordinate the federal assistance.

Defendant County of Maui (the "County") sent out requests for bids for the Kalepa-Alelele Rockfall Protection, Job. No. 06-66 (the "Project").  This Project was one of several projects designed to make the Hana Highway safe so that it could be reopened.  The Project entails removing loose rock from the hilllside above the Hana Highway and installing ring net systems to control rock and debris from falling onto the road.  The bidding materials for the Project did not include certain provisions of the Buy American Act, 41 U.S.C. § 10a et seq.  The

2

bidding materials stated that the Buy American provisions of the Surface Transportation Assistance Act did not apply to the Project.

Plaintiff HI-TECH Rockfall Construction, Inc. ("HI-TECH" or "Plaintiff") and Defendant Janod, Inc. ("Janod") made bids for the Project. HI-TECH bid $8,952,850, and Janod bid $5,600,000. The difference in the amounts of the bids is mostly due to the fact that Janod intends to install a temporary ring net system that would be removed after the Project was complete, whereas HI-TECH's bid includes using netting that would be permanently installed.

Janod states that because its stockpiles ring net systems that can be reused, it can pass on a substantial cost savings for this Project. The nets used by Janod are manufactured in Italy. Janod stockpiles the ring nets in the United States for use in emergency situations such as this and its nets are removable and reusable at other emergency sites. There is only one company in the United States that manufactures ring netting. That netting, however, cannot be removed and reused, and takes at least four months to manufacture and ship. That netting is more costly than the netting used by Janod and remains in place as a permanent fixture.

The County and Janod state that the ring net system for this Project will not be permanently installed or incorporated as part of the rock stabilization work. Janod states that it is required to remove the nets at the end of the Project.

3

The County states that once the scaling of the hillside is complete, the netting will be removed, and the natural rock face of the hillside, which has been modified to protect against future rock falls, will be exposed.

HI-TECH argues that if the ring net system is a temporary measure and not permanent, it makes no sense that the County require, as it has, that the system be painted, PVC coated, and use stainless steel rings.  HI-TECH argues that the County has mischaracterized the ring net system as temporary as a way to avoid application of the Buy American Act.  If the ring net was permanent, the Buy American Act would apply.  HI-TECH also argues that the Project specifications were written for Janod in particular since everyone knows that only Janod has such nets readily available and since Janod uses Golder & Associates for many of its projects and Golder & Associates had input into the specifications for the Project.

On February 1, 2008, prior to submitting its bid, HI-TECH informed the County of its arguments about the alleged deficiency of the bidding materials and the alleged conflict and favor of Janod.  HI-TECH filed a formal protest on February 6, 2008.  Due to the urgency of getting the road reopened, the County decided not to delay the bidding process.  HI-TECH has filed an appeal with the State Department of Commerce and Consumer Affairs.  That appeal is currently pending.

4

Because HI-TECH believed that the County was about to award the contract to Janod, allegedly in violation of the Buy American Act, HI-TECH filed the instant suit on February 22, 2008, and simultaneously filed a motion for a temporary restraining order ("TRO").  A hearing was held on February 26, 2008, during which the County stated that it would award the contract to Janod within the next several days.  Based on the limited record at that time, it appeared that the Buy American Act applied to the bid and that it had not been followed.  The County argued that even if the Buy American Act applied, there was an exception for unreasonable cost and that Janod was the low bidder even after increasing its bid by a certain factor.  Therefore, the County argued, it was appropriate to award the contract to Janod.  Due to the limited time to prepare for the TRO hearing, the County was unable to cite the provisions of the Buy American Act that set forth the percentage increase factor.  This Court, therefore, granted the motion for temporary restraining order, set the hearing for the preliminary injunction motion within ten business days, and set an expedited briefing schedule.

The parties simultaneously filed their briefs regarding a preliminary injunction on February 29, 2008, as ordered by this Court.  Plaintiff maintains that the County is illegally trying to avoid the application of the Buy American Act by listing the ring netting as temporary.  Plaintiff argues that the installation should be

5

listed as permanent and that, because the Project has a substantial portion of its

funding from the Stafford Act, the Buy American Act applies.  The County has

violated the Buy American Act, Plaintiff argues, by soliciting bids and failing to

include in the solicitation materials that the Buy American Act applies and include

certain provisions relating to the Buy American Act.  Plaintiff also argues that the

solicitation gives Janod an unfair advantage in the bidding process.  Plaintiff seeks:

1) injunctive relief to prevent the County from awarding or executing any contract

with Janod; 2) a declaratory judgment that the Project is required to comply with

the Buy American Act and that Janod may not bid on this Project because of its

alleged conflict of interest; and that HI-TECH, as only remaining bidder, should be

awarded contract; and 3) damages for its bid preparation costs and attorney's fees

and costs.

## STANDARD OF REVIEW

Under Rule 65(b) of the Federal Rules of Civil Procedure, the Court

may grant a temporary restraining order if "it clearly appears from specific facts

shown by affidavit or by verified complaint that immediate and irreparable injury,

loss, or damage" will result to the moving party before the adverse party can be

heard.  Fed. R. Civ. P. 65(b).  In order to obtain a preliminary injunction, the

moving party must demonstrate "either: (1) a likelihood of success on the merits

6

and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in [the moving party's] favor." Lands Council v. Martin, 479 F.3d 636, 639 (9th Cir. 2007) (citing Clear Channel Outdoor Inc. v. City of Los Angeles, 340 F.3d 810, 813 (9th Cir. 2003)). "These two options represent extremes on a single continuum: 'the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor.'" Id. (citing Sw. Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003)).

An alternative interpretation of the test requires: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." Id. (citing Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995)). "Under any formulation of the test, the plaintiff must demonstrate that there exists a significant threat of irreparable injury." Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1376 (9th Cir. 1985). A district court has great discretion in determining whether to grant or to deny a preliminary injunction. See Wildwest Inst. v. Bull, 472 F.3d 587, 589-90 (9th Cir. 2006).

7

<u>DISCUSSION</u>

Defendants argue that this Court does not have jurisdiction. Defendants also argue that the Buy American Act does not apply because there is no guarantee that federal funds will be used for the Project, and because the ring net is temporary and therefore, no foreign materials are being purchased. Defendants further argue, therefore, that the County's bidding documents were not deficient. In addition, Defendants assert that the unreasonable cost exception applies, making Janod an appropriate bidder.

## I.    <u>Jurisdiction</u>

Plaintiff alleges that this Court has jurisdiction pursuant to either federal question, 28 U.S.C. § 1331, or diversity jurisdiction, 28 U.S.C. § 1332. For diversity jurisdiction to exist, there must be complete diversity between the plaintiffs and the defendants and the amount in controversy must be more than $75,000.  28 U.S.C. § 1332.

Defendants argue that because Plaintiff has not identified its principal place of business, it is unclear whether there is complete diversity.  Defendants next argue that Plaintiff has not even alleged in its Complaint that the amount of controversy is more than $75,000, and the only monetary damages that Plaintiff is

seeking is an unspecified amount to compensate Plaintiff for its bid preparation costs.

Plaintiff, however, resolved these issues by filing a First Amended Complaint on March 4, 2008.  In the First Amended Complaint Plaintiff alleges that it is an Oregon corporation and has its principal place of business in Oregon, Defendant County of Maui is a subdivision of the State of Hawaii, and Defendant Janod is incorporated in Vermont with its principal place of business in New York. In addition, Plaintiff asserts that the amount in controversy is more than $75,000 in that should Janod be disqualified from bidding, Plaintiff would be the only responsible bidder that submitted a bid.  Plaintiff's bid is valued at several million dollars.

"[I]t is well established that the amount in controversy is measured by the value of the object of the litigation."  Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002) (citation and internal quotation marks omitted).  Here, Plaintiff has alleged that Janod is not an appropriate bidder and that this Court should declare that as the lowest responsible bidder, Plaintiff is entitled to the award of the contract by the County.  Plaintiff's bid for the work was $8,952,850.  Plaintiff is claiming that if Janod is considered an inappropriate bidder, the County will have no choice but to award the contract to Plaintiff as there is no other bidder.  Thus,

the amount in controversy is the amount which Plaintiff would be paid if it was awarded the contract.  As that amount far exceeds $75,000, this Court has jurisdiction.

II.    Likelihood of Success on the Merits

The parties dispute whether the Buy American Act applies to the Project.  Plaintiff asserts that the County *may* receive funds from the federal government, through FEMA, and that the ring netting is a permanent fixture and as such the Buy American Act applies.  Plaintiff further asserts that the County violated the Act by failing to include certain provisions of the Act in the bidding materials.  Defendants claim there is no guarantee that the County will receive any money from the federal government, and that the ring netting is temporary and therefore, the Buy American Act does not apply.  The County also asserts that even if the Buy American Act applied, the unreasonable cost exception allows it to use Janod as the contractor even though its ring netting is manufactured in Italy.

The Buy American Act provides that ". . . only such manufactured articles, materials, and supplies as have been manufactured in the United States . . . shall be acquired for public use."  41 U.S.C. § 10a.  The term "public use" means

10

"use by, public building of, and public work of, the United States, the District of Columbia, Puerto Rico, American Samoa, the Canal Zone, and the Virgin Islands." 41 U.S.C.A. § 10c.  Although the Stafford Act may apply and FEMA has been authorized to provide assistance, the County has presented evidence that no federal monies have yet been obligated or promised.  The County states that any monies it may receive from FEMA are on a reimbursement basis, and the County's application for such money may be denied if FEMA believes that it did not comply with certain requirements.  Therefore, there is absolutely no guarantee that federal funds will ever be used to pay for any part of this Project.  Plaintiff has not presented any evidence to the contrary.  Therefore, as no federal monies have yet been obligated or promised, it is unlikely that Plaintiff will be able to establish that the Buy American Act applies.

Nonetheless, if federal money was obligated, it is unlikely that Plaintiff will be able to establish that the Buy American Act applies because the ring netting appears to be temporary and not permanent.  The Act only applies to items acquired for public use.  The Act, however, does not define the term "acquired."  The Code of Federal Regulations defines the term "acquisition" as "the acquiring by contract with appropriated funds of supplies or services (including construction) by and for the use of the Federal Government through

11

purchase or lease. . . ."  48 C.F.R. § 2.101.  In addition, the Code of Federal

Regulations pertaining to the acquisition of foreign supplies and construction

materials states that the Buy American Act "[r]estricts the purchase of supplies,

that are not domestic end products, for use within the United States. A foreign end

product may be purchased if the contracting officer determines that the price of the

lowest domestic offer is unreasonable or if another exception applies (see Subpart

25.1)."  48 C.F.R. § 25.001

       Defendants argue that because the ring netting will be removed at the

completion of the Project, it is not being purchased and will not be owned by the

County.  Therefore, the County argues that it will not be acquired for public use

and the Buy American Act does not apply.  Plaintiff points out that the requirement

that the ring nets have paint and coatings is unusual for a temporary installation,

and the fact that the purpose of the netting is to protect the highway from falling

rocks indicate that it is not temporary.  Furthermore, the FEMA Project Worksheet

provides that "FEMA and State Civil Defense will closely monitor the project" and

"measures such as . . . ring nets . . . is limited to that necessary to alleviate the

immediate threat of additional rockfalls caused by aftershocks or extreme

atmospheric conditions expected to occur within 5 years."  (Doc. #38 at Ex. 1A.)

Plaintiff argues that this 5-year window is concerning because although the bidding

12

materials state to bid the removal of a temporary ring net system, there is no

specification that the ring nets be removed or time frame for when the removal

must be done.  Plaintiff also asserts that the anchors and related grout for the ring

nets can never be removed and would have to be cut off and left in place.

Plaintiff has failed to establish that it is likely to succeed on this issue.

First, the specifications call for the use of the ring netting only during the process

of scaling the hillside and that the ring net is to be removed after scaling is

complete.  Second, the FEMA Project Worksheet also provides that the "longest

duration of work proposed is 20 days," and that "the use of . . . ring nets . . . must

also be . . . temporary in nature."  (Id.)  Finally, through declarations filed in this

Court, the County of Maui has stated under penalty of perjury that "the temporary

ring net system is for the scaling and trimming operation to prevent removed rocks

from falling. . . . the bid specifications calls for the temporary ring net to be

removed after the job is done."  (Krueger Decl. ¶¶ 9, 10.)  Janod likewise testified

under penalty of perjury that:

> 10.    Since the Project calls for installing the nets on a
> temporary basis, the contractor is required to remove the
> nets at the end of the Project. . . .
> 11.    The ring net used by Janod is not permanently
> installed or incorporated as part of the rock stabilization
> work.  The ring net is a temporary barrier . . . .

> 12.     Janod removes the ring net at the completion of the Project.
> 13.     For the work described in the County of Maui's request for bids for the Project, the ring net would be employed as stated in paragraphs 11 and 12 above.

(Journeaux Decl. ¶¶ 10-13.)

Plaintiff, therefore, has not established that the ring net, whether considered to be a supply or construction material under the Buy American Act, will actually be acquired by the County. Thus, Plaintiff is unlikely to succeed on its claim that the Buy American Act applies to the use of the ring netting in this circumstance.

Furthermore, Plaintiff is unlikely to succeed on the merits because it has not established that there was no rational basis for determining that the Buy American Act did not apply and/or that the unreasonable cost exceptions applies, or that it was prejudiced by allegedly deficient bidding materials.

The scope of judicial review under the Buy American Act is very narrow and is limited to whether the procurement officials' decision on matters committed to his discretion had a rational basis, or whether the procurement procedure involved a prejudicial violation of the applicable statutes and regulations. Textron v. Adams, 493 F. Supp. 824, 828 (D.C. Cir. 1980); Kentron-Haw., Ltd. v. Warner, 480 F.2d 1166, 1169 (D.C. Cir. 1973) (a losing bidder must

14

demonstrate that an agency's decision "on matters committed primarily to [its] own discretion had no rational basis or [that] the procurement procedure involved a clear and prejudicial violation of applicable statutes or regulations.").

The Code of Federal Regulations for the Buy American Act provide that "the contracting officer may acquire a foreign end product [or construction materials] without regard to the restrictions of the Buy American Act" when "the contracting officer concludes that the cost of a domestic end product [or construction materials] would be unreasonable, in accordance with 25.105 and Subpart 25.5 [or 25.204]."  48 C.F.R. § 25.103 (exceptions for supplies); 48 C.F.R. § 25.202 (exceptions for construction materials).

48 C.F.R. § 25.105 provides that

> (b) If there is a domestic offer that is not the low offer, and the restrictions of the Buy American Act apply to the low offer, the contracting officer must determine the reasonableness of the cost of the domestic offer by adding to the price of the low offer, inclusive of duty--
>     (1) 6 percent, if the lowest domestic offer is from a large business concern; or
>     (2) 12 percent, if the lowest domestic offer is from a small business concern. The contracting officer must use this factor, or another factor established in agency regulations, in small business set-asides if the low offer is from a small business concern offering the product of a small business concern that is not a domestic end product (see Subpart 19.5).

(c) The price of the domestic offer is reasonable if it does not exceed the evaluated price of the low offer after addition of the appropriate evaluation factor in accordance with paragraph (a) or (b) of this section. (See evaluation procedures at Subpart 25.5.)

48 C.F.R. § 25.204 provides that "[u]nless the head of the agency specifies a higher percentage, the contracting officer must add to the offered price 6 percent of the cost of any foreign construction material proposed for exception from the requirements of the Buy American Act based on the unreasonable cost of domestic construction materials."

Here, regardless of whether the ring netting to be used by Janod is considered a supply or construction material under the Buy American Act, after applying even the largest adjustment to Janod's bid, Janod remains the low bidder by over $2,000,000.  For example, pursuant to the regulations, the contracting officer need only add six percent to the cost of the foreign product, which in this case would be the ring netting.  However, even if the contracting officer were to apply the six percent upward adjustment to Janod's entire bid, it does not come close to Plaintiff's bid.  Specifically, Janod's bid is $5,600,000.  Six percent of that bid is $336,000, which would increase Janod's bid to $5,936,000.  Certainly, this amount is no where near Plaintiff's more than $8,000,000 bid.  Even if this Court applied the maximum factor of 12 percent, Janod's bid would only increase to

16

$6,272,000, which still leaves a difference of over $2,000,000 between the two bids.

Plaintiff complains that despite the application of the unreasonable cost exception, the solicitation materials are still illegal because mandatory provisions of the Buy American Act were not followed, such as the department head making a determination that using American-made ring netting would unreasonably increase the cost and stating that exception in the specifications.  See 48 C.F.R. § 25.202(b) ("When a determination is made . . . that certain foreign construction materials may be used, the contracting officer must list the excepted materials in the contract. The agency must make the findings justifying the exception available for public inspection.").  Although this Court agrees with HI-TECH that if the Buy American Act applied, inclusion of the mandatory terms and exceptions in the bidding papers would create a level playing field, Plaintiff has not explained how the bids would have been different had the department head applied and complied with the Buy American Act by listing the netting as an excepted supply or material, or including other Buy American Act language.

For example, HI-TECH complains that it is inappropriate for the County to require the ring net system to be painted, PVC coated, and use stainless steel rings and states that its bid would have been much lower had a clear set of

17

bidding documents been issued.  However, HI-TECH has not stated that if those

requirements were not in place its bid would be reduced by more than $2,000,000.

Likewise, HI-TECH has not alleged that it would be able to secure less costly ring

netting if it had known that it could use a foreign manufactured product.  In

essence, Plaintiff has not explained how its bid could have been the low bid had the

County applied and complied with the Buy American Act.  Thus, as the record

stands, Plaintiff is unlikely to succeed on its claim that the procurement procedure

resulted in a prejudicial violation of the Buy American Act.

Ultimately, the unreasonable cost exception of the Buy American Act

could apply and if it did, Janod would remain the low bidder, thereby making the

award to Janod appropriate.  HI-TECH is unlikely to succeed on its claim that a

rejection of its bid on the basis of unreasonable cost allegedly made without

complying with the provisions of the Buy American Act was without a rational

basis, or that Plaintiff was prejudiced by the violation of the Act.

HI-TECH next alleges that Janod has a conflict of interest in the

bidding process since a consultant it uses was used to prepare the specification

materials, and it appears that the solicitation materials were made to favor Janod.

HI-TECH, however, has not argued that such alleged conflict and favor violates the

Buy American Act or some other law or agency regulation.  Indeed, HI-TECH

18

does not cite any law in this portion of its brief.  Instead, Plaintiff cites to

specifications for this Project and compares them to other solicitations for similar

work in the State.  Therefore, this Court is uncertain as to the legal basis for

Plaintiff's allegation of a violation of a specific statute or regulation pertaining to

conflict and favor.  See M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1303 (D.C.

Cir. 1971) ("courts should be reluctant to intervene absent a clear showing of

illegality by the party attempting to overturn the agency determination.").  This is

not a federal issue and Plaintiff has not shown that this issue is related to the Buy

American Act.  This issue is for administrative review or by review in State Court.

Accordingly, Plaintiff is unlikely to succeed on the merits of this claim.

III.    Irreparable Harm and Public Interest

"Mere financial injury . . . will not constitute irreparable harm if

adequate compensatory relief will be available in the course of litigation."

Goldie's Bookstore, Inc. v. Superior Court of Cal., 739 F.2d 466, 471-72 (9th Cir.

1984); Colo. River Indian Tribes v. Town of Parker, 776 F.2d 846, 850 (9th Cir.

1985) ("economic injury alone is not considered irreparable.").  The reasoning

behind this is that an injunction is an equitable remedy and therefore, is available

only to a party who can "demonstrate that her remedy at law was inadequate."

Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir. 1994); Beacon Theatres,

Inc. v. Westover, 359 U.S. 500, 506-07 & n. 8 (1959) ("The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies.").

> Mere injuries, however substantial, in terms of money, time and energy . . . are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.  Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business.

Wis. Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C. Cir. 1985) (citations omitted).

Plaintiff asserts that an injunction is necessary because once the award has been made, its monetary damages are limited to the costs of making the bid and it will lose out on the opportunity for the contract and recovery of its anticipated profit.  See Haw. Rev. Stat. 103D-701(g).  This Court is not convinced that Plaintiff is so limited because Hawaii Revised Statute 103D-701(g) provides that the bid preparation costs are "[i]n addition to any other relief."  Id.  Furthermore, the Governor has suspended the State procurement code, and the County has not claimed that the procurement code will be followed.[1]  That said, "damages

---

[1] The State procurement code provides that "[t]he procedures and remedies provided for in this part, and the rules adopted by the policy board, shall be the exclusive means available for persons aggrieved in connection with the solicitation

(continued...)

available to the disappointed bidder, which do not comprehend anticipated profit, are [not] automatically an 'adequate' legal remedy as to warrant dismissal for want of equity of every injunction action regardless of the strength of plaintiff's claim on the merits." Steinthal, 455 F.2d at 1302.  Thus, Plaintiff has demonstrated a possibility of irreparable harm.

This Court must also consider the public interest.  There is clearly a public interest in the swift and less costly repair to and reopening of this vital highway.  As pointed out by the County, certain communities have already been affected for 15 months.  These communities have had to use long and circuitous routes to get to work and schools, and receive mail.  Indeed, the County states that some employees have been unable to get to work, students cannot attend school, mail cannot be delivered, stores cannot receive goods, and emergency medical ambulance services and native Hawaiian access and gathering rights cannot be exercised.  Plaintiff argues that there is an interest in preventing the Buy American Act from being violated.  However, because Plaintiff's claim that the Act applies

---

[1](...continued)
or award of a contract . . . to resolve their claims or differences."  Haw. Rev. Stat. § 103D-704.  If the County conceded that the procurement code applied to Plaintiff's protest, then it would be Plaintiff's exclusive remedy for allegations based on conflict and favor in the solicitation materials.  However, if the procurement code is not being applied in this circumstance, Plaintiff arguably has a remedy in this Court.

and was violated is weak, the public interest factor clearly weighs in favor of denying an injunction.

Although a bidder may lose out on its expected profit if not awarded the contract, the fact that the bidder may receive at least its realized financial losses in the form of its bid preparation costs,

> provides a sound equitable basis for the exercise of this discretion in considering whether to entertain a suit for injunctive relief. . . . [an] urgent matter should not arise often, but when it does arise there is discretion in the District Court to decline to consider the prayer for injunctive or declaratory relief, and to leave the bidder solely to his damages remedy. . . .there is discretion under doctrines of public interest to withhold relief even assuming the private bidder cannot be made completely whole in damages.

Id. at 1302-03 (citations omitted).

In addition, in analyzing the public interest, these issues of conflict and favor in solicitation materials are certainly more suitable for a decision by the State agency, rather than by this Court. See id. at 1304 ("The balancing of the public interest in free and fair competitive bidding against both the fairness to the parties and the Government's contractual needs requires informed judgments by officials continuously faced with such decisions, not by the courts which are unfamiliar with, and ill-equipped to handle, problems couched in these

procurement policy terms."); see also Sea-Land Service, Inc. v. Brown, 600 F.2d 429, 434 (3rd Cir. 1979) ("Although much must depend on the circumstances, by and large, the courts have recognized the necessity of exercising restraint in interfering with procurement decisions and of recognizing a large measure of discretion in the contracting officers.").

Plaintiff is unlikely to succeed on the merits because federal funds have not yet been obligated or promised, the ring netting will be removed and therefore is not being acquired by the County, Plaintiff has not established that it could lower its bid sufficient to become the low bidder, and Plaintiff has not identified what agency regulations were violated by the alleged conflict and favor in the bidding process.  In addition, because Plaintiff may be able to recover its actual costs in making the bid, and the public interest tips the scales in Defendants' favor, this Court denies Plaintiff's request for a preliminary injunction and dissolves the TRO.

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Plaintiff's motion for preliminary injunction and dissolves the temporary restraining order previously issued.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 11, 2008.



_____
David Alan Ezra
United States District Judge

<u>HI-TECH Rockfall Construction v. County of Maui, et al.</u>, CV No. 08-00081 DAE-LEK; ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DISSOLVING THE TEMPORARY RESTRAINING ORDER