IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

HI-TECH ROCKFALL            )        CV. NO. 08-00081 DAE-LEK
CONSTRUCTION, INC., an Oregon )
corporation                 )
                            )
            Plaintiff,      )
                            )
    vs.                     )
                            )
COUNTY OF MAUI, a Hawaii    )
Municipal Corporation and JANOD, )
INC., a Foreign Profit Corporation, )
                            )
            Defendants.     )
_____ )

ORDER GRANTING IN PART AND DENYING IN PART
COUNTY OF MAUI'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING IN PART AND DENYING IN PART DEFENDANT JANOD,
INC.'S MOTION FOR SUMMARY JUDGMENT

On February 17, 2009, the Court heard Defendants' Motions.  Lyle M.

Ishida, Esq., Joseph Kotowski, III, Esq., and John F. Bradach, Sr., Esq., appeared

at the hearing on behalf of Plaintiff HI-TECH Rockfall Construction, Inc. ("HI-

TECH" or "Plaintiff"); Madelyn S. D'Enbeau, Deputy Corporation Counsel,

appeared at the hearing on behalf of Defendant County of Maui; Paul R. Grable,

Esq., appeared at the hearing on behalf of Janod, Inc.  After reviewing Defendant

County of Maui's (the "County") motion and Defendant Janod, Inc.'s ("Janod")

motion and the supporting and opposing memoranda, the Court GRANTS IN

PART AND DENIES IN PART Defendant County of Maui's motion for summary judgment (Doc. # 138) and GRANTS IN PART AND DENIES IN PART Defendant Janod's motion for summary judgment (Doc. # 133).  This Court grants the motions with respect to Plaintiff's claims for injunctive relief, declaratory judgment, due process violation, unjust enrichment, and attorneys' fees based upon the private attorney general doctrine.  This Court denies the motions with respect to Plaintiff's promissory estoppel, fraud, and civil conspiracy based on fraud claims and Plaintiff's request for a constructive trust.[1]

## BACKGROUND

I.    Factual Background

On October 15, 2006, there was an earthquake which measured 6.7 on the Richter scale and caused extensive damage in the State of Hawaii, including the closure of a portion of the Hana Highway on the Island of Maui due to falling rocks.  That same day Governor Linda Lingle issued a proclamation declaring a major disaster for the State of Hawaii, and authorized an emergency disaster fund and suspended the application of several State statutes, including Hawaii's procurement code, Hawaii Revised Statute Chapter 103D (the "Procurement

---

[1]Because the County did not address Plaintiff's equal protection claim or attorneys' fees claims based upon bad faith in its motion, this Court did not address those claims herein.

Code").  President Bush declared a major disaster under the Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121-5206 (the "Stafford Act").  President Bush authorized federal relief and recovery assistance and stated that the Federal Emergency Management Agency ("FEMA") would coordinate the federal assistance.

Although the project manager for the County believed that it was not necessary to follow the bid process based upon the suspension of the Procurement Code, he sent out requests for bids (the "Solicitation") for the Kalepa-Alelele Rockfall Protection, Job. No. 06-66 (the "Project").  This Project was one of several projects designed to make the Hana Highway safe so that it could be reopened.  The Project entailed removing loose rock from the hillside above the Hana Highway and installing ring net systems to control rock and debris from falling onto the road.  The project manager states that he put the Project out for bids to obtain the lowest price for the County.

Prior to sending out the Solicitation, the project manager for the County consulted with Defendant Janod and others to determine how the rocks might be contained during the scaling and trimming process.  The County states that it sought Janod's input because the Project involved an overhanging cliff and the roadway shoulder was narrow to non-existent and therefore the typical rockfall

3

barrier used on other projects in the area would not work.  Janod help craft the bid specifications.  The final decision with respect to the specifications was made by the project manager for the County and approved by his director.[2]

Geotechnical engineering firm Golder sent an engineer, Richard Cross, to support FEMA with their assessment of the highway landslide damages. Cross developed project worksheets to characterize the damages for Kalepa and Alelele area, in which he determined limits, area and costs.  Janod met with Cross several times about work needed for the Project.

Sato & Associates, Inc. ("SAI"), a structural engineering firm, conducted a geotechnical study of the areas assisted in the planning and design work for the area of the Project.  SAI gave Janod a topographical map of the project site.  Janod became a sub-consultant to SAI and helped with the proposed project designs.  On July 31, 2007, Janod made a budgetary proposal to SAI for field investigation and budgetary estimate construction cost for itself and for

_____

[2] The County states that it normally used Sato & Associates as its consultant to help prepare the bid solicitation.  However, Sato & Associates declined to act as consultants because it believed that the proposed solution was only a temporary fix.  The County cites to the project manager's declaration as support for this statement.  The project manager's declaration, however, does not make such statement.

Golder.  SAI instructed them to proceed with their consulting work and eventually signed a proposal.  SAI did not pay Janod for this work.

On August 8, 2007, FEMA determined that Golder had a conflict of interest because of Richard Cross' work in preparing the FEMA worksheets for the Three Undermined Areas project, a neighboring project.  FEMA prevented Janod from using Golder because Cross prepared the FEMA project worksheets.

On September 6, 2007, Golder made a proposal to SAI for geotechnical engineering support services to develop slope repair concepts for $35,000.  Richard Sato of SAI signed the proposal.

Janod had always believed that the County would award it the contract on a sole source basis.  When Janod learned that the County decided to put it out for bid, Janod "started backing up."  SAI did not want Janod to be disqualified from further work if the Project went out to bid.  SAI therefore asked Golder and sub-consultant YKE to remove all references to Janod in their reports. When SAI issued its final report, the final Golder and YKE reports did not reference Janod. The County did not accept SAI's proposal for the area because it involved a set of options that were considered permanent fixes, rather than temporary fixes.

Project engineer for the County, Joe Krueger, prepared the Solicitation materials.  The project engineer relied on SAI for the projects' design,

and he consulted with Golder.  In addition, he was aware of Janod's participation.

Either Golder or Janod provided Krueger with the design solution of using

temporary netting on the face of the slope.  Krueger sent out the Solicitation

materials.  The final report from YKE was part of Solicitation, but Janod's name

had been removed from the report.

　　　　The Notice to Bidders, included as part of the Solicitation, described

the Project as follows "installing temporary ring net systems with cable anchors on

the cut slope, scaling loose rock materials and rock/boulder demolition along the

cut slope, removal of debris generated from slope scaling, archaeological

monitoring, and other incidentals." (County's Ex. A.)  The Notice further stated

that the Project "was similar to the Manawainui Rockfall Protection project, except

for the elimination of the temporary rockfall barrier on the road replaced with a

temporary ring net system." (Id.)  The Notice estimated the construction cost

between $5 Million and $10 Million.  Finally, the Notice stated "[t]he Department

of Public Works reserves the right to reject any or all proposals and to waive any

defects in said proposals for the best interest of the public." (Id.)

　　　　Also included in the Solicitation was a document entitled Section 103

Award and Execution of Contract.  That document provided that "[t]he award of

contract, if it be awarded, will be made within 60 calendar days after the opening

6

of bids, to the lowest responsible bidder whose proposal complies with all the requirements."  Hawaii law defines "a responsible bidder" as "'one who is not only financially responsible, but who is possessed of the judgment, skill, ability, capacity and integrity requisite and necessary to perform the contract according to its terms.'"  Fed. Elec. Corp. v. Fasi, 527 P.2d 1284, 1291 (Haw. 1974).  In addition, the document stated "[t]he Department reserves the right to reject proposals, waive technicalities or advertise for new proposals, if the rejection, waiver, or new advertisement favors the Department." (County Ex. B.)

The Solicitation also contained a non-collusion and non-assistance provision, as follows: The

> Department may disqualify a bidder and reject its proposal for . . . (7) Evidence of assistance from a person who has been an employee of the agency within the proceeding two years and who participated while in State/County office or employment in the matter with which the contract is directly concerned, pursuant to Section 84-15, HRS.

(Solicitation, section 102.12(7).)  In addition, the proposal form included a representation that "[t]he undersigned, as bidder, declares that this proposal is made without collusion with any other person, firm or corporation[.]"  (Pl.'s Ex. 31.)

On February 1, 2008, prior to submitting its bid, HI-TECH informed the County of its arguments about the alleged conflict and favor of Janod. HI-TECH filed a formal protest of the invitation for bids on February 6, 2008, with the County. Due to the urgency of getting the road reopened, the County decided not to delay the bidding process and denied HI-TECH's protest on February 20, 2008. Plaintiff believes that this was improper because the County stated that neither SAI nor Golder had been involved in the design portion of the work and was silent regarding Janod's involvement. In addition, Plaintiff believes that no investigation was made into the conflict question. HI-TECH filed an appeal of the denial with the State Department of Commerce and Consumer Affairs ("DCCA") on February 27, 2008.

Plaintiff and Janod made bids for the Project. HI-TECH bid $8,952,850, and Janod bid $5,600,000. The difference in the amounts of the bids was mostly due to the fact that Janod intended to install a temporary ring net system that would be removed after the Project was complete, whereas HI-TECH's bid included using netting that would be permanently installed. Janod previously stated that because it stockpiles ring net systems that can be reused, it can pass on a substantial cost savings for this Project.

The nets used by Janod were manufactured in Italy.  Janod stockpiled the ring nets in the United States for use in emergency situations such as this and its nets are removable and reusable at other emergency sites.  There is only one company in the United States that manufactures ring netting.  That netting, however, cannot be removed and reused, and takes at least four months to manufacture and ship.  That netting is more costly than the netting used by Janod and remains in place as a permanent fixture.

Previously, the County of Maui and Janod stated that the ring net system for this Project would not be permanently installed or incorporated as part of the rock stabilization work.  Janod had stated that it was required to remove the nets at the end of the Project.  The County stated that once the scaling of the hillside was complete, the netting would be removed, and the natural rock face of the hillside, which has been modified to protect against future rock falls, will be exposed.  In June 2008, the County made the ring netting permanent.  The County claims that the manufacturer provided a certificate of compliance stating that the ring netting met the specifications set forth in the Solicitation.

In order for the County to receive reimbursement from FEMA, the ring netting needed to be temporary.  FEMA deemed the Project ineligible for funding in March 2008.  The County appealed the determination and in December

2008, FEMA re-obligated funds of approximately $800,000 for all projects in the earthquake area.  The County has appealed the amount FEMA deemed eligible.

The project manager for the County chose Janod for the project. Janod completed the Project ahead of schedule and on budget.  Janod was allowed to change certain restrictions of the Solicitation and paid additional sums.  The road was reopened on October 5, 2008.

II.   Procedural History

While its appeal was pending with the DCCA, and because HI-TECH believed that the County was about to award the contract to Janod, allegedly in violation of the Buy American Act, HI-TECH filed the instant lawsuit in this Court on February 22, 2008, and simultaneously filed a motion for a temporary restraining order.  A hearing was held on February 26, 2008, during which the County stated that it would award the contract to Janod within the next several days.

Based on the limited record at that time, it appeared that the Buy American Act applied to the bid and that it had not been followed.  The County argued that even if the Buy American Act applied, there was an exception for unreasonable cost and that Janod was the low bidder even after increasing its bid by a certain factor.  Therefore, the County argued, it was appropriate to award the

10

contract to Janod.  Due to the limited time to prepare for the TRO hearing, the County was unable to cite the provisions of the Buy American Act that set forth the percentage increase factor.  This Court, therefore, granted the motion for temporary restraining order, set the hearing for the preliminary injunction motion within ten business days, and set an expedited briefing schedule.

At the preliminary injunction hearing, HI-TECH maintained that the County of Maui was illegally trying to avoid the application of the Buy American Act by listing the ring netting as temporary.  HI-TECH argued that the installation should be listed as permanent and that, because the Project has a substantial portion of its funding from the Stafford Act, the Buy American Act applied.  The County violated the Buy American Act, HI-TECH argued, by soliciting bids and failing to include in the solicitation materials that the Buy American Act applied, and include certain provisions relating to the Buy American Act.  HI-TECH also argued that the solicitation gave Janod an unfair advantage in the bidding process. HI-TECH argued that if the ring net system were a temporary measure and not permanent, it made no sense that the County require, as it did, that the system be painted, PVC coated, and use stainless steel rings.  HI-TECH argued that the County mischaracterized the ring net system as temporary as a way to avoid application of the Buy American Act.  If the ring net were permanent, the Buy

American Act would apply.  HI-TECH also argued that the Project specifications were written for Janod in particular because everyone knows that only Janod has such nets readily available and because Janod uses Golder & Associates for many of its projects and Golder & Associates had input into the specifications for the Project.

On March 11, 2007, this Court issued an order denying HI-TECH's request for a preliminary injunction and dissolved the temporary retraining order. (Doc. # 40.)  This Court found that it had jurisdiction based upon diversity of the parties and the amount in controversy.  This Court also found that HI-TECH was unlikely to succeed on the merits of its Buy American Act claim for the following reasons: (1) no federal monies had yet been obligated or promised; (2) the ring netting appeared to be temporary and not permanent and therefore was not being purchased; (3) HI-TECH had not established that there was no rational basis for the procurement officials' determination that the Buy American Act did not apply; (4) it appeared that the unreasonable cost exception to the Buy American Act would apply, allowing the award to Janod because after applying even the largest adjustment to Janod's bid, Janod remained the low bidder by over $2,000,000; and (5) HI-TECH had not shown that it was prejudiced by allegedly deficient bidding materials because it had not explained how its bid could have been the low bid had

12

the County of Maui applied and complied with the Buy American Act.  This Court further found that HI-TECH was unlikely to succeed on its claim that there was conflict of interest, or favor shown to Janod, because HI-TECH had failed to cite to a specific statute, regulation, or other law pursuant to which it was making such a claim.

After this Court's denial of the preliminary injunction, HI-TECH filed a motion to stay the administrative proceedings with the DCCA and the County of Maui filed a motion to dismiss the administrative proceedings with the DCCA.  On May 5, 2008, the DCCA granted the County of Maui's motion to dismiss and denied HI-TECH's motion to stay.  The hearings officer found that the Governor's suspension of the application of the Procurement Code removed HI-TECH's protest from the jurisdiction and authority of the hearings officer.  Because there was no longer an applicable statutory vehicle providing an appeal right to the DCCA, and because the DCCA is a tribunal of limited jurisdiction, the hearings officer lacked the legal authority to hear the appeal or stay the administrative proceedings.

On March 31, 2008, the County of Maui filed a motion to dismiss. (Doc. # 43.)  The County of Maui argued that the Complaint failed to state a claim for the alleged conflict of interest and favor to Janod, and that the Buy American Act did not apply to the Project, and therefore this Court did not have jurisdiction.

13

This Court denied that motion on May 14, 2008.  This Court held that it had jurisdiction, as it already found that diversity of the parties existed and there was more than $75,000 at issue.  This Court further found that there were factual issues regarding the promise of federal funds and that the County had not made a motion for summary judgment.

HI-TECH then sought leave to file a Second Amended Complaint, which was granted in part on July 11, 2008.  HI-TECH filed its Second Amended Complaint on July 25, 2008.  Janod filed a motion to dismiss on August 14, 2008. (Doc. # 92.)  This Court granted the motion with respect to the First, Third, Fourth, Fifth, and Sixth Claims for relief, and the portion of the Second Claim to the extent it sought ancillary relief.  This Court denied the motion with respect to declaratory judgment claim.

Plaintiff filed a Third Amended Complaint on November 7, 2008. Plaintiff alleges: 1) injunctive relief to prevent the County from awarding or executing any contract with Janod for the Project ("First Claim"); 2) a declaratory judgment that, *inter alia,* Janod is not a responsible bidder because of its alleged conflict of interest; and that HI-TECH, as the only remaining responsible bidder, should be awarded contract ("Second Claim"); 3) Promissory Estoppel against the County ("Third Claim"); 4) Civil Conspiracy against both defendants ("Fourth

Claim"); 5) Fraud ("Fifth Claim"); 6) Civil Rights claim under the Fifth and

Fourteenth Amendments pursuant to 42 U.S.C. § 1983  ("Sixth Claim"); 7) State

civil rights claim ("Seventh Claim"); Unjust enrichment against Janod ("Eighth

Claim"); 8) Constructive trust ("Ninth Claim"); and 10) Bad faith and private

attorney general attorneys' fees.

     The County filed the instant motion for summary judgment on

December 3, 2008.  (Doc. #138.)  Janod filed its motion for summary judgment on

December 3, 2008.  (Doc. # 133.)  Plaintiff filed its oppositions on January 30,

2009.  Janod filed its reply on February 6, 2009.  The County filed its reply on

February 6, 2009.

STANDARD OF REVIEW

     Rule 56 requires summary judgment to be granted when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to

dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477

U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial -- usually, but not always, the defendant -- has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers. S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court

16

record not otherwise referenced in the separate concise statements of the parties."). "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

<u>DISCUSSION</u>

I.    <u>Injunctive Relief</u>

County of Maui argues that Plaintiff's claim for injunctive relief should be dismissed as moot since the contract was awarded and Janod has completed the work.

Mootness is a question of law for the court to determine.  <u>Oregon Advocacy Ctr. v. Mink</u>, 322 F.3d 1101, 1116 (9th Cir. 2003).  The mootness doctrine requires that an actual controversy exist at all stages of the litigation.  <u>Id.</u> "Generally, an action is mooted when the issues presented are no longer live and therefore the parties lack a legally cognizable interest for which the courts can grant a remedy."  <u>Id.</u>

Plaintiff argues that this Court already determined that it had standing, and that it has suffered an injury through being subjected to an unfair process, incurring bid preparation costs, and lost expected profits.  Plaintiff further argues that it may face this situation again because the County favored Janod in a very constricted market for a specialized service.

In order to have standing to obtain injunctive relief, a plaintiff must establish a "real and immediate threat of repeated injury."  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983).  The plaintiff cannot rest on past exposure to harm,

but instead must show some "substantial likelihood that the past challenged official

conduct will recur in the future."  Kruse v. State of Hawaii, 857 F. Supp. 741, 753

(D. Haw. 1994) (citing Nelsen v. King County, 895 F.2d 1248, 1250 (9th Cir.

1990)).  A mere possibility that the past official conduct will occur again and affect

the plaintiff is insufficient.  Sample v. Johnson, 771 F.2d 1335, 1340 (9th Cir.

1985).  Furthermore, a

> plaintiff's showing must be objective in character;
> plaintiff's mere attestation that she fears a repetition of the
> challenged conduct is insufficient to show a likelihood of
> recurrence.  In short, if there is no objectively
> demonstrable basis for concluding that any future
> recurrence of the challenged conduct will affect the
> plaintiff, there is no present case or controversy.

Coverdell v. Dep't of Social and Health Servs., State of Wash., 834 F.2d 758, 766

(9th Cir. 1987).

"[F]or purposes of assessing the likelihood that state authorities will

reinflict a given injury, [courts] generally have been unwilling to assume that the

party seeking relief will repeat the type of misconduct that would once again place

him or her at risk of that injury."  Honig v. Doe, 484 U.S. 305, 320 (1988); see Roe

v. City of New York, 151 F. Supp. 2d 495, 502 (S.D.N.Y. 2001) ("plaintiffs

asserting an injunction claim must allege the probability of a future encounter with

the defendant which is likely to lead to a similar violation of some protected right.").

Here, although Plaintiff may still have damage claims against Defendants as set forth below, its request that this Court enter an injunction requiring the County to award the contract to it or to resubmit bidding materials is moot because the Project is complete.  See Owen of Georgia, Inc. v. Shelby County, 648 F.2d 1084, 1094 (6th Cir. 1981) (finding a disappointed bidder's request for injunctive relief to be moot because construction of the project was substantially complete).

Accordingly, summary judgment is GRANTED on Plaintiff's claim for injunctive relief.

II.   Declaratory Judgment

Plaintiff seeks a declaration that: 1) Janod is not a responsible bidder and disqualified from bidding based upon a conflict of interest due to its pre-Solicitation involvement; its use of materials that do not meet Solicitation specifications; and its participation in an alleged conspiracy to conduct a sham procurement process; 2) Janod conspired to hide its prior involvement in the Project; 3) the Project is required to comply with the Buy American Act; 4) Plaintiff is the lowest responsible bidder and entitled to the contract; 5) the Hawaii

Procurement Code does not apply and Plaintiff's protest is not subject to administrative appeal; 6) the County breached is obligations to Plaintiff; 7) the County's promise created a promissory estoppel claim; 8) the County violated Plaintiff's due process and equal protection rights; 9) Plaintiff is entitled to recover damages based upon the constitutional violations; 10) Janod is jointly and severally liable based upon civil conspiracy; 11) Plaintiff is entitled to equitable relief based upon unjust enrichment; and 12) other declarations that the Court deems appropriate.

Plaintiff seeks declaratory relief here pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 ("DJA"), which provides that a district court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is sought.  28 U.S.C. § 2201(a).  The DJA "embraces both constitutional and prudential concerns."  Gov. Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222 (9th Cir. 1998).  "If the suit passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate.  This determination is discretionary, for the [DJA] is deliberately cast in terms of permissive, rather than mandatory, authority."  Id. at 1223.  The DJA "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."  Pub. Affairs Associates v. Rickover, 369 U.S. 111, 112

(1962); MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007) ("[t]his text has long been understood "to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.").

In exercising this discretion, the district court should "avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." Dizol, 133 F.3d at 1225.  In a footnote, the Dizol court suggested that other factors were appropriate for the district court's consideration, including whether the declaratory action will settle all aspects of the controversy; will serve a useful purpose in clarifying the legal relations at issue; is being sought merely for the purposes of procedural fencing or to obtain a res judicata advantage; or will result in entanglement between the federal and state court systems.  Id. n.5.

The County contends that a declaration that Janod is not a responsible bidder and is disqualified from the bidding process will avail Plaintiff nothing and therefore should be denied.  The County states that because it had discretion, Plaintiff suffered no concrete and particularized harm, and therefore has no standing for such declaration.  The County states that there is no support for a declaration that Plaintiff is the lowest responsible bidder.  The County also asserts that Plaintiff must show that it is likely to suffer harm or be wronged again in a similar way.

22

Janod makes similar arguments, relying on Application of Air Terminal Servs., Inc., 393 P.2d 60, 66-67 (Haw. 1964), for its assertion that a declaration that Plaintiff is the lowest bidder is futile because the County cannot be forced to award the contract to Plaintiff.  In Application of Air Terminal Servs., the Hawaii Supreme Court held that an unsuccessful bidder should not be awarded a contract where the contract has already been executed and partially performed. 393 P.2d at 66-67.

Plaintiff relies on Owen, where the Sixth Circuit noted that "[a]s a general rule, a declaratory judgment and an injunction are the only adequate means of protecting the public interest, the integrity of the competitive bidding process, and the rights of the individual bidder." Owen of Georgia, Inc., 648 F.2d at 1094. This, however, is insufficient to show that there is any purpose in making the declarations that Plaintiff seeks.  As noted above, the contract was awarded to Janod and the Project is complete.  Plaintiff cannot prevent an act that has already taken place with a declaration.  Moreover, Plaintiff cannot compel the County to award the contract to it.  Finally, Plaintiff has brought separate causes of action that take into account the other declarations that it seeks.  A mere declaration that Janod was not a responsible bidder or any other declaration that Plaintiff seeks, accomplishes nothing.

For this reason, Plaintiff's declaratory judgment claims are moot and Defendants' motions are GRANTED on this claim.

III.   <u>Promissory Estoppel</u>

Plaintiff argues that the Solicitation promised to award the contract to the lowest responsible bidder if it awarded a contract.  Plaintiff claims that it expected that its proposal would receive fair consideration since its bid was within the expected range stated in the Solicitation.  It also asserts that it was entitled to a level playing field and competing bidders would not be given special information about the Project and its requirements.

Under Hawaii law, the four elements of promissory estoppel are:

(1) There must be a promise; (2) The promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) The promisee does in fact rely upon the promisor's promise; and (4) Enforcement of the promise is necessary to avoid injustice. The "essence" of promissory estoppel is "detrimental reliance on a promise."

<u>Gonsalves v. Nissan Motor Corp. in Haw., Ltd.</u>, 58 P.3d 1196, 1211-12 (Haw. 2002).  A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."  <u>Id.</u> at 1212.

Relying on Keco Indus., Inc. v. United States, 492 F.2d 1200 (Ct. Cl. 1974), the County asserts that Plaintiff's claim fails because the Solicitation stated that the County had the right to reject proposals and waive defects.  The County states that Plaintiff does not have a claim because it knew that it would incur the expense of bid preparation and that it may not get the contract.[3]

In Keco Indus., Inc., 492 F.2d at 1205, the court stated

> [t]he procuring agency's enforceable responsibility to a bidder to read or evaluate properly his competitor's bid may be appreciably less in certain situations. One relevant factor in this connection is that, although the harm asserted is that the plaintiff would likely have received the award but for incorrect preference given his successful competitor's bid, there is no assurance that any bidder would have obtained the award since the Government retains, in its discretion, the right to reject all bids without any liability.

Keco Indus., Inc., 492 F.2d 1200, 1205 (Ct. Cl. 1974).

---

[3] The County also argues that a plaintiff bringing a promissory estoppel claim against the government must prove more than negligence.  The cases cited by the County, however, did not apply Hawaii law, or involved an equitable estoppel claim, not a promissory estoppel claim.  For example, the County cites Coelho v. Fernandez, 384 P.2d 527, 530 (1963), for the proposition that estoppel must be established by clear and convincing evidence.  The court did not so hold in that case and at most stated that "the question at issue is whether defendant established by clear, definite and unequivocal evidence that a right to specific performance." Id. at 531.

Plaintiff counters that it reasonably relied on a promise to award the contract to the lowest responsible bidder as stated in the Solicitation and that such promise inherently includes a promise of non-collusion and non-assistance.

"[I]t is an implied condition of every request for offers that each of them will be fairly and honestly considered. . . . [this] rule extend[s] to all procurement situations . . . ." Continental Business Enters, Inc. v. United States, 452 F.2d 1016, 1019 (Ct. Cl. 1971). "Many courts have held that it is an implied condition of every invitation for bids issued by a public contracting authority that each bid submitted pursuant to the invitation will be fairly considered in accordance with all applicable statutes." Paul Sardella Const. Co., Inc. v. Braintree Housing Authority, 329 N.E.2d 762, 766 (Mass. App. 1975) (citing Heyer Prod. Co. v. United States, 140 F. Supp. 409, 412-13 (Ct. Cl. 1956); Keco Indus. Inc. v. United States, 428 F.2d 1233, 1240 (1970); William F. Wilke, Inc. v. Dep't of the Army, 485 F.2d 180, 183 (4th Cir. 1973)).[4]

_____

[4] Several courts have also held where a procurement code applies, that "[s]hould the public contracting authority fail to give such consideration, the implied contract formed by the submission of such a bid is broken, and recovery of bid preparation costs is deemed a proper remedy." Paul Sardella Const., 329 N.E.2d at 766-67 (citing M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289, 1302 (1971); Merriam v. Kunzig, 476 F.2d 1233, 1241 (3d Cir. 1973), cert. den. sub nom., Gateway Center Corp. v. Merriam, 414 U.S. 911 (1973); William F. Wilke, Inc. v. Department of the Army, 485 F.2d 180, 181-182

(continued...)

In Swinerton & Walberg Co. v. City of Inglewood-L.A. County Civic Center Authority, 40 Cal. App. 3d 98 (Cal. App. 2. Dist.1974), similar to the Solicitation here, the public entity retained the privilege to reject all bids and the notice soliciting bids stated "that any and all bids might be rejected." Id. at 103. The losing bidder brought a promissory estoppel claim based upon Restatement of Contracts, section 90, which has nearly identical elements to a Hawaii state law claim. The losing bidder was the lowest responsible bidder. The court found that "[t]o hold that Argo was not entitled to rely upon this promise because of the just-mentioned reservation of the right to reject any and all bids would make the Authority's promise an illusory one and render the whole competitive bidding process nugatory. Id. at 104. The court further found that

> [t]he public obviously has both an economic and a moral interest in public works contracts being awarded to the lowest responsible bidders. An award of monetary damages to the lowest responsible bidder for the misaward of a public works contract would be in the

---

[4](...continued)

(4th Cir. 1973); McCarty Corp. v. United States, 499 F.2d 633, 637-638 (Ct. Cl. 1974) (bid preparation costs awarded); Cincinnati Electronics Corp. v. Kleppe, 509 F.2d 1080, 1089 (6th Cir. 1975); Armstrong & Armstrong, Inc. v. United States, 356 F. Supp. 514, 521 (E.D. Wash.1973) (bid preparation costs awarded). In addition, two courts have stated that in certain cases the award of bid preparation costs alone may be inadequate. General Elec. Co. v. Seamans, 340 F. Supp. 636, 640 (D.D.C. 1972). Ainslie Corp. v. Middendorf, 381 F. Supp. 305, 307 (D. Mass.1974)." See M. Steinthal & Co., supra, at 1302.

> public interest as well as that of the injured bidder because
> such an award would deter such misconduct by public
> entities in the future.

Id. at 105.[5]  "[T]he public interest requires that damages be awarded to ensure that the public bidding laws are complied with, as failure to ensure that all bids are treated fairly could result in fewer bids being submitted for public contracts . . . ." Bradford & Bigelow, Inc. v. Com., 509 N.E.2d 30, 36 n.15 (Mass. App. Ct.1987). This Court finds the Swinerton & Walberg Co. case persuasive.

The County argues that even if its Solicitation contained an implied condition to treat bids fairly, Plaintiff has not provided any evidence that its bid was not treated fairly because there is no evidence that the Solicitation was modified and Plaintiff was not informed.  This argument is misplaced.  Plaintiff's argument is that because Janod was involved in early stages, a modification was not necessary because Janod was able to sculpt the specifications to its advantage in the first place and knew which specifications would not be strictly adhered to.

---

[5] The court noted that "the damages that Argo may recover in promissory estoppel might well be limited to those it sustained directly by reason of its justifiable reliance upon the Authority's promise - in other words, to the expenses it incurred in its fruitless participation in the competitive bidding process." Id. Although th County believes that Plaintiff would likewise be limited to its bid preparation costs, it did not make this argument in its motion.

Plaintiff has provided enough evidence to create a genuine issue of fact with respect to its promissory estoppel claim.  Admittedly, Janod was involved prior to accepting bids and provided counsel to the County's project engineer with respect to specifications.  This possibly gave Janod an unfair advantage by giving it the ability to tailor its bid. See Brewer Environ. Indus., Inc. v. A.A.T. Chemical, Inc., 832 P.2d 276, 278, 279 (Haw. 1992) ("any irregularity in the bidding process which permits or contributes to bidders submitting bids on different terms or with unequal information invalidates the bidding and any contract awarded thereon. Moreover, where contract specifications are indefinite or misleading as to prevent real competition between the bidders, no valid contract can exist. . . It is the very availability of additional information modifying or altering contract specifications, quantities in this instance, which renders the bidding process illegal and invalid. Supplemental information modifying the contract specifications obtained privately are improper precisely because bidders will receive unequal information creating competitive disadvantages among the bidders.").

Although the Procurement Code does not apply, by sending out the Solicitation the County made a promise to give bids fair consideration and not allow collusion or unfair advantage.  Had Plaintiff known of Janod's previous

29

involvement, it may not have placed a bid.  For these reasons, the County's motion

is DENIED.

IV.   Fraud

The County argues that Plaintiff failed to state a claim for fraud with

particularity because there is no allegation that false statements were made in

contemplation that Plaintiff would rely on them. The County states that it only

stated that if it awarded the Project, it would award it to the lowest responsible

bidder, and Janod was the lowest responsible bidder.  The County contends that its

statement that if it awarded a contract it would be awarded to the lowest responsible

bidder is at most a promise of a future intention and not a material

misrepresentation of a past or existing fact.  In addition, the County asserts that

Plaintiff has not offered clear and convincing evidence of fraud.

Plaintiff claims that the issuance of the Solicitation for a competitive

procurement impliedly represented falsely that Plaintiff's bid would be considered

fairly and the County knew it could not be fair because Janod had prior involvement

giving it an unbeatable advantage.  In addition, Plaintiff states that even after it

protested the Solicitation, the County covered up Janod's involvement and did not

investigate Janod's alleged conflict of interest.  Finally, Plaintiff states that the

County denied its protest and falsely stated that neither Sato nor Golder were

30

involved in the design portion of the work and remained silent as to Janod's participation.

The elements of the State law claim of fraud are: "1) false representations made by the defendant; 2) with knowledge of their falsity (or without knowledge of their truth or falsity); 3) in contemplation of plaintiff's reliance upon them; and 4) plaintiff's detrimental reliance." Larsen v. Pacesetter Systems, Inc., 74 Haw. 1, 30 (1992); see Kang v. Harrington, 59 Haw. 652, 656 (Haw. 1978). "The party claiming fraud must establish these elements by clear and convincing evidence." Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1067 (Haw. 2000).

To be actionable, the alleged false representation must relate to a past or existing material fact and not the occurrence of a future event. Stahl v. Balsara, 587 P.2d 1210, 1214 (1978) (emphasis added).

> [F]raud cannot be predicated on statements which are promissory in their nature, or constitute expressions of intention, and an actionable representation cannot consist of mere broken promises, unfulfilled predictions or expectations, or erroneous conjectures as to future events, even if there is no excuse for failure to keep the promise, and even though a party acted in reliance on such promise.

Id. (citations omitted).

"Fraud is never presumed. Where relief is sought on account of fraudulent representations, the facts sustaining the charge should be clearly and satisfactorily established . . . . Where misrepresentations are made to form the basis of relief, they must be shown to have been made with respect to a material fact which was actually false . . . ." Shoppe, 14 P.3d at 1067.

Plaintiff has provided enough facts to create a genuine issue as to whether by sending out the Solicitation with its non-collusion materials, after having allowed Janod to be involved and have access to specific information about the area, the County knowingly made a false representation.  Again, it is admitted that Janod had a lot of information about the site by working with Sato and the County and that Janod aided in determining the specifications required.  In addition, the County was later silent about Janod's participation, and Sato was concerned that Janod may have a conflict of interest in making the bid.  It is for the jury to decide if this is true, and whether the County made false representations in its Solicitation because it had no present intention of providing a fair bidding process.  See Fed. Elec. Corp., 527 P.2d at 1287, 1289 (noting that the prime object of the Procurement Code was to provide fair competition among the bidders and "anything which tends to impair this is illegal . . . ." and providing "the opportunity for favoritism, extravagance, and improvidence in awarding a public contract,"

leaves the procedure "susceptible to abuse and manipulation render[ing] it illegal");

see also Brewer Environmental Indus., Inc. v. A.A.T. Chemical, Inc., 832 P.2d 276,

279 (Haw. 1992) ("It is the very availability of additional information modifying or

altering contract specifications, quantities in this instance, which renders the

bidding process illegal and invalid.  Supplemental information modifying the

contract specifications obtained privately are improper precisely because bidders

will receive unequal information creating competitive disadvantages among the

bidders.").[6]

       Accordingly, Plaintiff's fraud claim survives summary judgment and

the County's motion is DENIED with respect to this claim.

V.      Civil Rights Claims

       Plaintiff states that its due process and equal protection rights were

violated because the County involved Janod in the process of investigation,

planning and design which produced the Solicitation and its specifications.  Plaintiff

states that this gave Janod special information, including knowing which

restrictions and requirements would not be followed.  In addition, Plaintiff

_____

       [6] This Court cites these cases not to hold that the Procurement Code applied,
but for illustrative purposes only to aid in the explanation of why Plaintiff believes
the County engaged in fraud with respect to statements made in the Solicitation
and the silence regarding Janod's knowledge and assistance.

complains that the County rebuffed its requests for clarification and denied its

protest without investigation into Janod's conflict of interest, and awarded Janod

the contract, which was already tainted by Janod's involvement.

The County argues that Plaintiff's civil rights claims should be

dismissed because it does not have a property interest where government action is

discretionary.  The County states that Plaintiff had no contract with the County, and

had only an offer that was not accepted, which is insufficient to create a property

right.[7]

"The touchstone of due process is protection of the individual against

arbitrary action of government . . . ."  Wolff v. McDonnell, 418 U.S. 539, 558

(1974).  "A threshold requirement to a substantive or procedural due process claim

is the plaintiff's showing of a liberty or property interest protected by the

Constitution."  Wedges/Ledges of Cal. v. City of Phoenix, 24 F.3d 56, 62 (9th Cir.

1994) (citing Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972)); Action Apartment

Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th Cir. 2007).

A procedural due process claim hinges on proof of a protectible liberty or property

---

[7]The County has moved for summary judgment only with respect to
Plaintiff's due process claim.  The County has not addressed Plaintiff's equal
protection claim.

interest; and a denial of adequate procedural protections.  See Foss v. Nat'l Marine

Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998) (citations omitted).

"To have a property interest, a person clearly must have more than an

abstract need or desire." Nunez v. City of L.A., 147 F.3d 867, 872 (9th Cir. 1998).

"A mere 'unilateral expectation' of a benefit or privilege is insufficient; the plaintiff

must 'have a legitimate claim of entitlement to it.'" Id. (quoting Roth, 408 U.S. at

577); see also Doran v. Houle, 721 F.2d 1182, 1186 (9th Cir. 1983) (The "mere fact

a person has received a government benefit in the past, even for a considerable

length of time, does not, without more, rise to the level of a legitimate claim of

entitlement.").

Protected property interests are not created by the Constitution, but by

"existing rules or understandings that stem from an independent source such as state

law-rules or understandings that secure certain benefits and that support claims of

entitlement to those benefits." Thornton v. City of St. Helens, 425 F.3d 1158, 1164

(9th Cir. 2005) (citing Roth, 408 U.S. at 577).  "A reasonable expectation of

entitlement is determined largely by the language of the statute and the extent to

which the entitlement is couched in mandatory terms." Wedges/Ledges of Cal., 24

F.3d at 62 (internal quotation omitted); see also Town of Castle Rock v. Gonzales,

545 U.S. 748, 760 (2005) (noting that property interests arise only when the

35

relevant state law provisions "truly ma[k]e [the conferral of the benefit] mandatory").

Janod and the County argue that because it had the discretion to not award a contract at all, Plaintiff has no property interest. Plaintiff disagrees and argues that Janod should have been disqualified pursuant to existing Maui County Code section 3.12.070, which was not suspended, and the statements made in the Solicitation at the Section 103 Award and Execution of Contract.

Maui County Code section 3.12.070 provides that competitive bidding should be in accord with the procedure that "[t]he finance director shall award the contract to the lowest responsible bidder." The Solicitation provided that "[t]he award of contract, if it be awarded, will be made within 60 calendar days after the opening of bids, to the lowest responsible bidder whose proposal complies with all the requirements." Solicitation paragraph 102.12(7) states that the

> Department may disqualify a bidder and reject its proposal for . . . (7) Evidence of assistance from a person who has been an employee of the agency within the proceeding two years and who participated while in State/County office or employment in the matter with which the contract is directly concerned, pursuant to Section 84-15, HRS.

(Solicitation paragraph 102.12(7).) Plaintiff argues that if Janod were disqualified based upon its unfair advantage, Plaintiff would be the lowest responsible bidder.

Plaintiff relies on two cases from the Western District of Washington for its argument that a disappointed bidder has a sufficient property interest to assert a due process claim, Three Rivers Cablevision, Inc. v. City of Pittsburgh, 502 F. Supp. 1118, 1131 (D.C. Pa. 1980), and Teleprompter of Erie, Inc. v. City of Erie, 537 F. Supp. 6 (D.C. Pa. 1981).

In Three Rivers, the court reviewed the city code and the ordinance requiring that the contract be awarded to the "lowest responsible bidder," while at the same time giving the city the right to reject all bids. The court held that although the city was not obligated to award a contract, if it did award a contract it must exercise its discretion in a non-arbitrary fashion to determine the lowest responsible bidder. The district court stated "[t]he due process to which one possessing the protected interest was entitled was the non-arbitrary exercise by the city of its discretion in making the award. And it follows that a deprivation of the substantive benefit (the protected property interest) without the process due is an actionable wrong." 502 F. Supp. at 1131.

Likewise, the court in Teleprompter of Erie, held that once the city solicited bids pursuant to its procurement code, "it was under a statutory obligation to exercise its discretion in a non-arbitrary way . . . in full compliance with the specifications unless the city decided not to make any award . . . . [and thus,]

37

plaintiff has sufficiently alleged a property interest in the award of the contract."
Teleprompter of Erie, 537 F. Supp. at 11.

This Court does not find these cases persuasive.  Indeed, the Third

Circuit disagreed with the reasoning of these two cases in Teleprompter of Erie, Inc.

v. City of Erie, 537 F. Supp. 6, 1178 n.11 (D.C. Pa.1981).  The Third Circuit noted

that the requirement of selecting the lowest responsible bidder was for the benefit of

the public only and did not give a low bidder standing to challenge a municipality's

failure to award a contract in accordance with the statute.  The court stated the

unsuccessful bidders had made only a proposal for a contract that was not accepted

and therefore had no legitimate expectation of receiving a contract until it was

actually awarded.  Id. at 1178.  Accordingly, the court held that a dissapointed

bidder "has not been deprived of a property interest that warrants procedural due

process protection."  Id.

In addition, in AlohaCare v. Hawaii, Dept. of Human Servs., 567 F.

Supp. 2d 1238, (D. Haw. 2008), Judge Mollway found that the disappointed bidder,

which was the nonprofit health maintenance organization AlohaCare, had no

property interest in a Medicaid contract.  Id. at 1262.  This was because pursuant to

the statutes at issue, the State had "the discretion to decide which qualifying entities

to contract with, [it] had the discretion to determine whether to contract out

Medicaid services at all." Id. at 1262-63.  The statute in question simply made

AlohaCare eligible to receive a Medicaid contract, it did not require the State to

award AlohaCare the contract.  Id.; see Cassidy v. State of Hawaii, Dept. of Transp.,

Harbors Div., 915 F.2d 528, 531 (9th Cir. 1990) (finding no property right in an

expectation of a renewal of a permit because "[a] constitutional entitlement cannot

'be created-as if by estoppel-merely because a wholly and expressly discretionary

state privilege has been granted generously in the past.'") (internal quotation

omitted); see also Keahole Def. Coal., Inc. v. Bd. of Land & Natural Res., 134 P.3d

585, 599-600 (Haw. 2006) ("It is well settled that when a governmental agency has

discretion in granting a license, parties such as Waimana do not have a legitimate

claim of entitlement."); Maui Vacation Rental Ass'n, Inc. v. County of Maui, Civil

No. 07-00495, 2007 WL 4440962, at *10 (D. Haw. Dec. 19, 2007) (finding that

plaintiff could not establish an entitlement to a specific process or a permit because

the county maintained full discretion in determining whether to grant conditional

and special use permits).

Here, Plaintiff's arguments that Maui County Code section 3.12.070

creates a property interest and Janod should be disqualified for violating

Solicitation paragraph 102.12(7) are unpersuasive.  The code section and

Solicitation paragraph, like the other paragraphs in the Solicitation, are worded in

39

discretionary terms.  Specifically, Solicitation paragraph 102.12(7) uses the words

"may" disqualify in addressing whether or not a bidder could be disqualified.  The

Solicitation paragraph does not impose a mandatory duty on the County.

Plaintiff has not pointed to any other statute or wording in the

Solicitation that required the County to confer the benefit of the contract to Plaintiff

or to disqualify Janod.  In other words, Plaintiff has not shown that it had a

legitimate claim of entitlement to the contract.  Plaintiff, therefore, cannot establish

that it had a protectible property interest.  For these reasons, the County's motion is

GRANTED with respect to Plaintiff's due process claim.

VI.    <u>Conspiracy</u>

Plaintiff argues that the County conspired with Janod to perpetuate a

sham competitive bidding process by depriving Plaintiff of a fair process.  Janod

asserts that it did not owe a duty to Plaintiff that was breached.[8]  Janod states that

because Governor Lingle suspended the Procurement Code, the fact that it engaged

in communications with the County prior to the bid is insufficient to establish a

---

[8] Janod argues that it cannot be found liable under the civil conspiracy claim because it did not owe a duty to Plaintiff that was breached.  This Court does not find these arguments persuasive because Janod focuses its argument on tortious actions other than fraud.  By signing the non-collusion section of the Solicitation, Janod arguably made a misrepresentation of fact or was possibly involved in a agreement to let Plaintiff believe the bidding process was fair.

40

civil conspiracy.  In addition, Janod and the County argue there is no evidence of an agreement between the County and Janod to perform an illegal act.

"'[T]he accepted definition of a conspiracy is a combination of two or more persons [or entities] by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.'"  Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., Inc., 982 P.2d 853, 881 n.28 (Haw. 1999) (quoting Duplex Printing Press Co. v. Deering, 254 U.S. 443, 466 (1921)) (alteration in original).  The plaintiff must allege an underlying actionable claim because "there can be no civil claim based upon a conspiracy alone . . . ."  Weinberg v. Mauch, 890 P.2d 277, 286 (1995); See Ellis v. Crockett, 451 P.2d 814, 822-23 (1969).

"A conspiracy is constituted by an agreement . . . No formal agreement between the parties is essential to the formation of the conspiracy,  for the agreement may be shown if there be concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose."  Marino v. United States, 91 F.2d 691, 694 (9th Cir. 1937);

> The existence of the joint assent of the parties need not be proved directly. Like any other ultimate fact, it may be found as an inference from facts proved. It is enough if the evidentiary facts and circumstances -- pieced together and considered as a whole -- convince the judicial mind

41

> that the parties united in an understanding way to
> accomplish the fraudulent scheme.

Kazuo Hashimoto v. Halm, NO. 2847, 1953 WL 7576, at*5 (Haw. Terr. Nov. 20,

1953); State v. Yoshida, 361 P.2d 1032, 1042 (1961) ("[t]he existence of a

conspiracy may be inferred from the circumstances.").

      Janod states that because the Procurement Code was suspended, the

County was allowed to communicate or negotiate directly with contractors and thus,

there is no evidence of an agreement to commit an illegal act or a legal act through

unlawful means.  This Court agrees.  Although the County project manager decided

later to put the Project out for competitive bid, during the time that the County was

working with Janod prior to the Solicitation, the County did not believe that it

would be required to put the Project out to bid.  In other words, there is no evidence

that the County always intended to put the Project out to bid and should have been

complying with the Procurement Code all along.  Accordingly, to the extent

Plaintiff's civil conspiracy claim is based solely on the pre-solicitation involvement

of Janod, it fails to state a claim.

      Plaintiff next argues that its conspiracy claim is also based upon an

agreement to commit fraud and violate its constitutional rights in issuing the

Solicitation.  Plaintiff claims that the County allowed Janod to bid with a substantial

advantage and concealed Janod's prior involvement during the protest hearing.

Plaintiff points out that Janod signed a non-collusion declaration which stated that

the proposal was made "without collusion with any other person, firm or

corporation[.]" (Ex. 31.)  Plaintiff states that Janod could not sign this in good faith.

Plaintiff further contends that once the County elected to subject the Project to

competition and promised a lowest responsible bidder award, it could not allow

Janod to compete without violating the law.  In addition, Plaintiff points out that

Janod's bid of $5,663,332, was very similar to the County's budget of $5.6 million,

which was a number known only to certain County employees.

As discussed above, Plaintiff's constitutional claims have been

rejected.  Accordingly, Plaintiff's conspiracy claim cannot be founded upon its

alleged due process violation because Plaintiff did not have protectible property

interest sufficient to bring a due process claim.  However, as also discussed above,

Plaintiff's fraud claim survives summary judgment.  Plaintiff has produced

evidence sufficient to create a genuine issue of fact as to whether Defendants made

an agreement at some point to cover up Janod's prior involvement and present an

alleged sham bidding process.  Therefore, Plaintiff's civil conspiracy claim to the

extent it is based upon its underlying claim of fraud survives summary judgment

and Defendants' motions are DENIED on this basis.

VII.   <u>Unjust Enrichment</u>

Plaintiff has brought a claim against Janod for unjust enrichment. Janod argues this claim should be dismissed because Plaintiff never bestowed a benefit to Janod.

A claim for unjust enrichment requires a showing that the plaintiff conferred a benefit upon defendant and the retention of that benefit would be unjust at the expense of the plaintiff.  <u>Porter v. Hu</u>, 169 P.3d 994, 1005, 1007 (Haw. App. 2007) ("[a] valid "claim for unjust enrichment requires only that a plaintiff prove that he or she conferred a benefit upon the opposing party and that the retention of that benefit would be unjust").  Because unjust enrichment is an equitable claim, the plaintiff must show the absence of a legal remedy at law.  <u>Id.</u>

<u>Porter</u> involved a claim for unjust enrichment brought by independent insurance agents against their former employer.  The independent agents had initially brought their own clients to the employer, but when their employment was terminated, the employer retained the independent agents' books of business.  <u>Id.</u> at 998.

Plaintiff cites <u>Porter</u> and argues that it stands for the proposition that the plaintiff does not need to be the person that conferred a benefit on the defendant.  Plaintiff states that in <u>Porter</u> the insurance agents did not write the

44

policies or pay the premiums to the employer, yet they were allowed to recover on their unjust enrichment claim.

Plaintiff's argument is misplaced.  The insurance agents conferred a benefit on their former employer by providing the clients to the employer in the first place.  Without that book of business, the employer would not have earned as much in premiums.  Accordingly, Porter does not stand for the proposition that a plaintiff need not be the person who conferred the benefit on the defendant in any manner.  Id. at 1007 (quoting the Restatement of Restitution, which provides a "person confers a benefit upon another if he gives to the other possession of or some other interest in money, land, chattels, or cho[ ]ses in action, . . . , or in any way adds to the other's security or advantage") (alterations in original) (emphasis added); see also Durette v. Aloha Plastic Recycling, Inc., 100 P.3d 60, 73 (2004) (noting that the plaintiff had conferred a benefit on the defendant).

Plaintiff also relies on Stafford Const. Co., Inc. v. Terrebonne Parish School Bd., 612 So.2d 847 (La. App. 1992), arguing that because Janod assisted in the County's flawed bidding process, it is entitled to equitable relief from Janod, including recovery of lost profits.  In Stafford, the court reviewed sections of the Louisiana code and found that "[a]s between bidders on a public contract, there is no duty owed which may give rise to a cause of action under [the code]."  Id. at

45

853.  However, the court held that an unsuccessful bidder could bring a cause of action against a successful bidder for damages under a different section of the Louisiana code "where it is alleged and shown that the successful bidder assisted in or encouraged the wrongful act."  Id.

This Court does not find the Stafford Const. case to be persuasive because the Louisiana court was interpreting Louisiana law and the case did not involve a claim for unjust enrichment.  Thus, this case does not address the issue at hand, which is whether the plaintiff, either directly or indirectly, must be the person who conferred the benefit.

As Plaintiff cannot establish that it conferred a benefit on Janod, either directly or indirectly, its claim for unjust enrichment fails.  Janod's motion for summary judgment is GRANTED on this issue.

VIII.  Constructive Trust

Janod asserts that a constructive trust is a remedy and not a substantive claim.  Janod then asserts that if all substantive claims against it are dismissed, this claim must likewise be dismissed.  As this Court has not dismissed the conspiracy claim for fraud against Janod, it will not dismiss the request that a constructive trust be imposed.

IX.   Bad Faith and Private Attorney General Fees

Plaintiff has brought a claim for attorneys' fees pursuant to the "private attorney general" doctrine.  Plaintiff contends that there is an overriding public interest in having the government follow its own regulations and Plaintiff is acting as a private attorney general by bringing attention to the flawed process.

The County argues that Plaintiff cannot meet the requirements of this doctrine because it cannot show that a favorable decision would benefit the public, and no socially important public policy would be vindicated.  The County also argues that the public was well served by the Project coming in on-time and on budget, with a savings of $3.3 million dollars, compared to Plaintiff's bid.  Finally, the County argues that the public is ill served by the expense of this litigation.[9]

"Normally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses."  In re Water Use Permit Applications, 25 P.3d 802, 804 (Haw. 2001).  The "private attorney general" doctrine is an exception to this rule that "allows courts in their discretion to award attorneys' fees to plaintiffs who have 'vindicated important public rights.'"  Id.

_____

[9] The County did not present argument regarding Plaintiff's bad faith claim. Although the County addresses this claim in its reply brief, it is too late as it deprived Plaintiff of presenting an opposition. Local Rule 7.4 provides that "[a]ny arguments raised for the first time in the reply shall be disregarded."

47

(citation omitted).  Courts applying this doctrine consider three basic factors: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision."  Id.

This Court agrees with the County; Plaintiff cannot meet each of the above elements for the private attorney general doctrine to apply.  First, the public policy that Plaintiff is attempting to enforce is the integrity of the procurement process and the government following its own regulations.  Here, however, the Procurement Code was suspended.  In addition, the portions of the Maui County Code and the Solicitation which Plaintiff cites gave the County discretion to award the contract and therefore, Plaintiff's due process claim has been dismissed.

Second, Plaintiff is the only person standing to benefit from a decision on its remaining claims.  The public has already received a savings and a completion of the project on time.  Accordingly, all that Plaintiff is attempting to redress, as set forth above, is a promissory estoppel claim and a fraud claim with respect to itself.  There is no indication that a situation like this -- where the Procurement Code is suspended, the County engages in discussions with a contractor, and although the County could award the contract directly to that contractor the County decides to put it out it bid -- is likely to happen again.

48

Moreover, as noted above, Plaintiff's due process claim has been dismissed.  Thus, there is no evidence that others will benefit from a favorable decision to Plaintiff on its fraud or promissory estoppel claims.  cf Id. at 806 ("this case involved constitutional rights of profound significance, and all of the citizens of the state, present and future, stood to benefit from the decision").

Accordingly, the attorney general doctrine does not apply to this case and the County's motion is GRANTED with respect to this issue.

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendants County of Maui's and Janod's motions for summary judgment.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 26, 2009.



_____
David Alan Ezra
United States District Judge

HI-TECH Rockfall Construction v. County of Maui, et al., CV No. 08-00081 DAE-LEK; ORDER GRANTING IN PART AND DENYING IN PART COUNTY OF MAUI'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT JANOD, INC.'S MOTION FOR SUMMARY JUDGMENT